Good morning and please support. My name is David Gilmore. I'm the attorney for the Intellects, Liam Barkett, Moderating Financial Advisors, and the Moscow Investments LLC. First of all, welcome to Stafford. We've dialed up a beautiful day for you while you're here. I mean Florida did for you, Florida. It's a little less muggy here, you're right. In this case, of course, it involves a simple... simple is probably not the right word, I guess... an appeal from a dismissal order. So I would just like to focus on a couple of issues in this case and address, of course, questions if they have any that one of the hang-ups that occurs to me that occurs with district court's analysis and part of the argument in this case has to do with the nature of the relationship in the discussions that were going on that led to this claim that there was fraud in this whole transaction. And the issue, it seems to me, is that the blanket statement or allegations made essentially that if you're in negotiations and you have an attorney on the other side and you're engaged in those negotiations and the reliance you have on representation by that attorney are essentially not justified. And what I would suggest to the court is that that case was way too broad a brush, especially in a case like this, where if you look at the pleadings and the course of the negotiations, remember, this went on and off between 2009 and the first trial in 2014. This is a negotiation of a business deal, essentially. Yes, there was a judgment, and yes, certainly, there were aspects of this relationship that were adversarial and may have had some of the bookmarks of a litigation-type dispute, but the judgment had already been entered. And the parties were in this negotiation that ultimately involved two other parties, Walmart and the city of Boston. So when these negotiations were going on, the actions of the attorney as he aced for his principle were really in the course and scope of a business negotiation, not in the course and scope of litigation, if you will. How is that in the inquiry? I don't believe so, because I think it becomes a fanciful question ultimately, based on the evidence. If you look at the Montebello Rose case, for example, which admittedly deals with the issue of the scope of the attorney-client privilege and the discoverability of information that underlies the privilege, the court drew a distinction between the actions of the lawyer as a business negotiator and the actions of the lawyer as a lawyer. Ultimately, as the report said, it's essentially a dominant-purpose test. We have to look at the dominant purpose of the negotiations that were going on to determine what capacity the lawyer was representing. The problem with what I perceive as the view, that it's almost like a per se rule, is that it opens the door for fraudulent activity. You have the agent acting on behalf of his principal in the course of negotiating a deal, and he makes misrepresentations, and he makes misrepresentations of information that are solely in his custody or control. And if you look at the plaintiffs in this case, there is a lot of things that happen over time where the parties in this course of conduct, where they relied on these events and they relied on these representations. And in point of fact, as Liz had complained, there were several times when this proposal, for example, was continued, and they relied on that. My client said, don't get involved with, or if that ever happened. Counsel? Yes. Do you have a case where justifiable reliance has been found where the plaintiff and an attorney conducted negotiations? I do not, actually. I can get as close as you want. What's the closest case you have to support your argument that an individual who is represented by an attorney in negotiations may steal a letter of justifiable reliance on such a reported misrepresentation? Yes, and obviously that's what we are reporting because it hasn't been proven yet. I would draw the court's attention first to this court's position in the Facebook case. It's a little bit indirect, I suppose, but in the Facebook case at 645th or 1034, the court talks about the Petro Ventures case and says we distinguish between buyers of securities and the contents of an exclusively business relationship and those acting in an adversarial setting that is characteristic of litigation. Similarly, in California, it takes a while. Well, the district court relied upon Facebook for the proposition that individuals who are represented by attorneys cannot generally show justifiable reliance. So how are you asserting that Facebook supports your proposition when the district court cited it to support its ruling that there was no justifiable reliance? Because I believe that the Facebook case is distinguishable, clearly. First of all, also, the district court relied, as I read it, more on the lower court ruling in Facebook as opposed to this court's opinion at 645th 3rd. But the distinction is in Facebook, the party sat down and had a mediation. They negotiated a resolution. They signed a settlement agreement, and that settlement agreement included the release of all claims known and unknown. And what the court was stressing was whether or not you could file an action under those circumstances and claim fraud when you are released, you voluntarily released all your unknown claims. In other words, as opposed to this circumstance where things are being represented to you, or not, as the case may be, you knowingly gave up the claim. So I think Facebook, in that respect, is a different decision. I think you have a more fundamental question. I understand that distinction, I guess, but I just don't know what the misrepresentations were that were relied upon here. The misrepresentations that are realized have to do with the representations that we were going to build through this process. We sneaked into the city, signing the improvement agreement. My client gave up the tax sharing agreement, and so on. And the representation was all that was being done so that the property could be developed, and that both parties would move towards sharing in that development. Well, everyone else would if they wanted to. Well, that's true, but... That doesn't make that a misrepresentation in a fraudulent sense. Well, I believe the misrepresentation lies more specifically when they are told, in writing and otherwise, that if this isn't going to happen, and if it's a quarter night, can you get this agreement, my client was going to put Wasco, the custody for the property, into a champion proceeding, and do a reorganization. Might work, might not, I don't know, but that was the plan. They specifically represented on multiple occasions that they would not conduct a foreclosure sale and possible loss of that property so that we could do this. And instead, what happened, they actually, as alleged, they did actually contend that many times, and then all of a sudden, they just said, no, everything is foreclosed. And without any notice to my client, the opportunity to deal with that. So it's a representation. I believe it is a representation. The misrepresentation is how to arise out of this... this course of conduct, these discussions, where they agreed on all of these things that my client actually signed the agreement. They agreed on all of these things, and then they moved into a point where it became impossible to perform because the representations that they made were too far with us to make it into this. We gave up the time-sharing agreement. We didn't get sex with this, but all those other things. They were not going to foreclose. And then they foreclosed. And when they were consensually 16 years old, they actually complained even then that, you know, there were representations going on. I think everybody understood in the course of this deal that the only way that anybody was going to get anything out of this project was if it went forward to development. So did you file the... did you cite the NYSERDA Facebook case in your brief? I believe I did, yes. When you're sitting down, if you can find it, it probably means where you cited it in your brief. You don't have to use your time now. Hold on. You know, Your Honor, I'm almost done. I only got 34 seconds left, so I'm done. That little part that I just referenced to the court appears on page... 1039, I believe. Where is that in your brief? No, the case is cited in the brief, and I distinguished the case with regard to the substance of the report, yes. I didn't see it, but maybe I'm overlooking something. But you can do it while you're waiting for a rebuttal. Well, I only have two seconds, so thank you. All right, thank you. We'll give you a minute for a rebuttal. Thank you. You can tell us where you cited that. Good morning, Your Honors. My name is Jessica Sharon, and I'm here on behalf of Appellees and Joseph Properties LLC and Arnold Wong. This case involves a commercial relationship between two sophisticated parties. Appellants borrowed tens of millions of dollars from appellees and then repeatedly defaulted on the loans, on the forbearance agreements, multiple forbearance agreements, and then ultimately, when the parties could not reach an agreement as to a third proposed moral forbearance agreement, St. Joseph decided to foreclose on that property, which they were well within their legal rights to do, in order to recoup its losses and effectively stop the bleeding and the years of losses that they had already incurred. The fact that the parties' negotiations failed and they could not agree on the terms of a third forbearance agreement is not fraud. It's a business deal that was not consummated, and although appellants may be disappointed that the deal they had hoped to reach was not ultimately realized, there is no fraud here. Appellants have not pled sufficient facts to state a claim for fraud. They haven't pled all elements of a claim for fraud, in particular a misrepresentation or a fraudulent concealment. They haven't alleged justifiable reliance, and they haven't alleged any resulting damage that could be attributed directly to the alleged fraud in this case. Counsel talks about the fact that there were counsel involved in this case, and I think just as a point of clarification, Judge O'Neill wasn't saying that simply because counsel was involved in the negotiations that therefore there was necessarily any reliance. Here the point is that both parties were sophisticated parties, both parties had their own counsel that they were able to seek advice from with respect to whether to file bankruptcy or not, whether to take certain actions within the negotiations or not, and so to the extent that appellants rely on representations from accountees, it's simply not justifiable. There was no fiduciary relationship between the parties. This was a borrower-lender relationship, and there was certainly no joint venture or any kind of other special relationship that would take this into the realm of an obligation on the part of the appellees to provide any information. The other thing that appears to be at least what we heard this morning was that there was a change of position on the part of the appellant in reliance on the negotiations going forward. Is your comment on that? That appears to be correct. Absolutely. As a special issue, just because a party takes an action as a result of a representation or so forth from another party, if there was a preexisting obligation to take that action anyway, that cannot be justifiable reliance as a matter of law. Here appellants referenced property taxes. They had an obligation under the Forbearance Agreements as the owners of the property to pay property taxes. If they didn't do that, they would have been in breach of that obligation. That's not justifiable reliance. They talk about having to pay for insurance again. They had an obligation to do that. Not justifiable reliance. They talk about the tax-sharing agreement that they entered into that appellees were not even a party to. If you look at the complaint, they specifically say that the reason that they assigned their rights under the tax-sharing agreement was because they needed to fund site improvements that were their obligation to do, and that they didn't have the funds to do so. They had to borrow even more money from the appellees in order to do so. But all of those actions that they took were based on preexisting obligations that they had a duty to do, irrespective of any representation from my client's cabinet. There was a foreclosure. But the foreclosure didn't happen until after the fact. I understand that. But the argument is that in reliance upon the representations, that there would be no foreclosure, especially if they did all the things that they would have had to do if they weren't planning to keep going. Absolutely. That assumes, though, that at the time those representations were made, even if those representations were made, that they were false at the time that they made them. And there are no facts alleged in the complaint that you can reasonably infer that they were false at the time that they were made. We talk about the course of conduct here. The parties had been doing this for a number of years. Our client, the appellees had taken numerous steps to try to continue this deal. They continued the foreclosure multiple times. They gave even more money. Even in April of 2014, when the deal fell apart, they were willing to even give more cash for non-additional collateral in order to save this deal. But in the end, it just appeared that this wasn't going to come to fruition and they needed to put an end to this. And they were well within their legal right to do so. In fact, if you'll notice in the complaint, there's no allegations that this was a wrongful foreclosure. And there's no allegations here that any breach of contract, that any contract was breached. What appellants seem to be doing here is they can't challenge the foreclosure because it wasn't wrongful. They can't bring a breach of contract claim because there was no contract. So their only option here is to try to twist the facts and to make this a no-fraud claim. But as you recognize, there was no misrepresentation here at all. There was no – there's no facts that show that at the time any of these representations were made, that appellees were – I think it was Menlo's plan. Exactly, Menlo's plan. And to the extent – just to note, to the extent that appellants tried to rely on a fraudulent concealment with respect to some third-party approval, there's absolutely no facts alleged in the complaint for that level of fraud. They don't identify who the third-party banking regulators are. They don't allege how they knew or they came to know or came to believe that approval was necessary. I mean, they say that plaintiffs learned through Mr. Marquette, who is one of the plaintiffs. So it's curious as to how they would frame a fraudulent concealment claim. So if you don't have fraudulent concealment, then we don't have a fraudulent misrepresentation. There's absolutely no fraud here. Were you involved in the negotiation? Personally? I was not. With your firm? No. How about with your billboard? He was involved. He was involved, and so to the extent that there could be additional allegations that go to that misrepresentation, it's curious why we wouldn't have seen them yet. I mean, I don't think there's any reason to even believe to amend here to the reason that if those facts existed, if there were specific representations that we could deduce that they were fraudulent at the time, I think we would have seen them already. But there aren't any facts alleged that would lead a reasonable person to believe that there was any fraud. On top of that, I agree two things to address the need to amend here. I mean, that's an abuse of discretion standard, and I think there's no indication here that Judge O'Neill abused his discretion in deciding that the need to amend is not appropriate. Notably, the appellants didn't even ask for a need to amend in their opposition to the motion to dismiss when that was filed or in any indication how they would cure these alleged defects. In their opening brief, they don't discuss how they would cure these defects. And in their reply brief, the only facts that they say they would potentially add are a few more dates, maybe a few more e-mails, and maybe some specific communications, although they do note that there are a ton of communications because the parties engaged in years of ongoing negotiations, so there would be a number of communications they would have to pull from to find something that would potentially be fraudulent. I just don't think that they have those facts. Otherwise, we would have seen them already. They've given no indication as to how they would prove reliance, other than what they already pled, and what they already pled are pre-existing obligations. And a decision to forego filing for bankruptcy, but given no indication that would have even been successful or that they took any formative steps to do so. In fact, even in arguing here before the court today, the state counsel mentioned who knows if that would have been successful. And that's the point. It's completely speculative. Perhaps they would have done it. Perhaps it would have been successful. But there's no indication that they actually did anything that would have prevented the result here. So, again, we've got a problem with resulting damages. You have to show that as a result of the fraud, appellants were damaged. But here, appellants lost the property because they defaulted on the loans, not because our client decided to exercise its legal right to foreclose. And, again, no allegation that that foreclosure wasn't proper. So I think here it's important to focus on the fact that, again, these are sophisticated parties. This was an ongoing negotiation. The complaint is completely lacking in specificity required under Rule 9 for any of the elements of fraud. And they haven't explained how they would cure those defects, so the judgment would not be appropriate in this case. Thank you, Counsel. Thank you. Thank you, Your Honor. First, I want to address your question. In the Facebook case, it was actually not cited until in my reply brief in response to the subject that was filed by the opposing parties. My discussion was about the case. It's just that it has a term on it. And yes, it is. So the reason you referenced that case was because I asked you if you had a case supporting your proposition that a party who is represented by an attorney may still show justifiable reliance on your use. So that discussion is not in the brief. Do you agree? It is. I do agree with that, Your Honor. I would suggest to the Court that the discussion about this distinction of being between the attorneys and the client is based primarily on the discussion that started in the Montebello Rose case, which I do cite, which is a labor negotiation case where the attorney was arguing the negotiator or arguing the attorney. And I think if you look at that case analysis in that case, which is also, I think, what you see in Facebook, I mean, it's showing that there has to be a distinction drawn. Otherwise, it would be too easy or potentially too easy for... Your Honor, let's drop the ladies, but we understand your point. Do you have anything else? Well, I'm going to use up my time, but I would just make a couple of quick comments if I may. Justifiable reliance, for example, on their poverty taxes and that all the poverty taxes were owed by Wasco Investments. It's Mr. Barkhead who agreed to pay them. He changed his position quite clearly with regard to the tax-sharing agreement that belonged to moderate financial advisors. So giving it up was substantial. And I think that the course of dealing in the scope of this arrangement here, these parties entered into a joint venture essentially to develop this property and then the forbearance that my client took and the actions he took and reliance on that to take the side of the citizen fraud are appropriate forms of justifiable reliance. All right, thank you, counsel. Thank you. Thank you to both counsels. The decision has already been submitted for decision by the court. The next case on calumny for argument is Southern Nevada. Excuse me. T.B.'s Fly Company vs. Universal Underwriters.
judges: Schroeder, Rawlinson, Stafford